| STATE OF INDIANA | | IN THE MARION SUPERIOR COURT |
|---|---|---|
| COUNTY OF MARION | SS: | CAUSE NO. |

**Rae-Jean Reynolds**, as Special Administratrix of the Estate of Jessie Leonard, Deceased,

Plaintiff,

v.

**Keith Shelton,
Joshua Smith,
Joseph Reynolds,
Dylan Sheets,
Indianapolis Metropolitan Police Department**, and
**The Consolidated City Of Indianapolis And Marion County**,

Defendants.

## Complaint for Damages and Jury Trial Demand

**Comes now** the Plaintiff, Rae-Jean Reynolds, as Special Administratrix of the Estate of Jessie Leonard, *deceased*, by counsel, and for her Complaint for Damages states as follows:

### I. PRELIMINARY STATEMENT

1. On September 24, 2021, Ms. Jessie Leonard was shot and killed at her home by Indianapolis Metropolitan Police Officers Keith Shelton, Joshua Smith, Joseph Reynolds, and/or Dylan Sheets of the Indianapolis Metropolitan Police Department.

2. This is an action for violation and deprivation of civil rights brought by Plaintiff, Rae-Jean Reynolds, as the Special Administratrix of the Estate of Jessie Leonard, Deceased, against the Consolidated City of Indianapolis and Marion County, the Indianapolis Metropolitan Police Department, Keith Shelton, Joshua Smith, Joseph Reynolds, and Dylan Sheets, under 42 U.S.C. § 1983 seeking all damages recoverable.

## II. PARTIES

3. Plaintiff, Rae-Jean Reynolds is the Special Administratrix of the Estate of Jessie Leonard, Deceased, having been appointed as such by the Marion County, Indiana Superior Court, Probate Division.

4. At all times relevant herein, Rae-Jean Reynolds was a resident of Indianapolis, Marion County, Indiana.

5. At the time of her death, Jessie Leonard was a resident of Indianapolis, Marion County, Indiana.

6. The Consolidated City of Indianapolis and Marion County (hereinafter "City") is a city incorporated under Indiana law and is located in Marion County, Indiana.

7. The City operates and controls the Indianapolis Metropolitan Police Department (hereinafter "IMPD") for the purpose of providing public safety and protection to the citizens of Indianapolis and the Indianapolis Metropolitan area.

8. Keith Shelton was at all times relevant hereto a law enforcement officer, as that term is defined in Ind. Code § 35-41-1-17, and an employee of the IMPD and

City who was performing his duties for and acting as an officer of the IMPD, and was acting under color of state law. He is being sued in his official and individual capacity.

9. Joshua Smith was at all times relevant hereto a law enforcement officer, as that term is defined in Ind. Code § 35-41-1-17, and an employee of the IMPD and City who was performing his duties for and acting as an officer of the IMPD, and was acting under color of state law. He is being sued in his official and individual capacity.

10. Joseph Reynolds was at all times relevant hereto a law enforcement officer, as that term is defined in Ind. Code § 35-41-1-17, and an employee of the IMPD and City who was performing his duties for and acting as an officer of the IMPD, and was acting under color of state law. He is being sued in his official and individual capacity.

11. Dylan Sheets was at all times relevant hereto a law enforcement officer, as that term is defined in Ind. Code § 35-41-1-17, and an employee of the IMPD and City who was performing his duties for and acting as an officer of the IMPD, and was acting under color of state law. He is being sued in his official and individual capacity.

12. The acts and omissions giving rise to this action occurred in Indianapolis, Marion County, Indiana.

### III. FACTS

13. On September 24, 2021, at approximately 1:30 p.m., IMPD Officers attempted a traffic stop near the intersection of West 38th Street and Dr. Martin Luther King Jr. Street.

14. The car was driven by a woman who was described as white and wearing a white hoodie, however her identity was unknown.

15. The driver failed to pull over and fled from the Officers.

16. The Officers did not pursue the vehicle.

17. At approximately 2:30 p.m., Keith Shelton located an unoccupied vehicle parked in front of 556 Eugene Street that matched the description of the vehicle that fled.

18. Keith Shelton took notes on the vehicle and briefly spoke to Jessie Leonard, who was sitting on the front porch of 556 Eugene Street.

19. Jessie Leonard denied owning the vehicle when she was questioned.

20. Several minutes later, Dylan Sheets arrived on scene.

21. Keith Shelton and Dylan Sheets were then joined by Joseph Reynolds at 556 Eugene Street.

22. The Officers then contacted Joshua Smith in order to attempt to positively identify Jessie Leonard as the driver of the vehicle.

23. Joshua Smith arrived on scene and approached the front porch of 556 Eugene Street.

24. He was joined by Keith Shelton, Dylan Sheets, and Joseph Reynolds.

25. As the four Officers approached, Jessie Leonard repeatedly instructed the Officers not to come any closer.

26. Despite this request, the four Officers continued to approach the front porch.

27. Keith Shelton, Dylan Sheets, Joseph Reynolds, and Joshua Smith negligently and/or intentionally fired shots at Jessie Leonard.

28. The gunshots fired by Keith Shelton, Dylan Sheets, Joseph Reynolds, and/or Joshua Smith killed Jessie Leonard.

29. At all times relevant herein, Keith Shelton, Dylan Sheets, Joseph Reynolds, and/or Joshua Smith were police officers employed by, working for, and performing duties on behalf of the IMPD and the City, in their capacity as IMPD officers, and acting under the color of state law.

30. Keith Shelton, Dylan Sheets, Joseph Reynolds, and/or Joshua Smith used excessive, unreasonable and unnecessary force when they shot and killed Jessie Leonard.

31. Keith Shelton, Dylan Sheets, Joseph Reynolds, and/or Joshua Smith unlawfully and without legal cause shot and killed Jessie Leonard.

32. Keith Shelton, Dylan Sheets, Joseph Reynolds, and/or Joshua Smith's use of deadly force was intentional and objectively unreasonable.

33. Keith Shelton, Dylan Sheets, Joseph Reynolds, and Joshua Smith violated Jessie Leonard's rights under the Fourth and Fourteenth Amendments to the United States Constitution, to be free from unreasonable search and seizure of her home and from the use of excessive, unreasonable and unjustified force, including deadly force, against her person.

34. Keith Shelton, Dylan Sheets, Joseph Reynolds, and Joshua Smith deprived Jessie Leonard of her life in violation of her Constitutional rights.

35. Keith Shelton, Dylan Sheets, Joseph Reynolds, and Joshua Smith's actions in shooting at and killing Jessie Leonard exhibited reckless and callous indifference to Jessie Leonard's constitutional rights.

36. The policies, procedures and customs of the IMPD led to, permitted and countenanced the use of excessive, unreasonable and unnecessary force, including deadly force, by its officers, including Keith Shelton, Dylan Sheets, Joseph Reynolds, and Joshua Smith.

37. The failure of the IMPD to follow and enforce some of its own internal policies and procedures led to, permitted and countenanced the use of excessive, unreasonable and unnecessary force, including deadly force, by its officers, including Keith Shelton, Dylan Sheets, Joseph Reynolds, and Joshua Smith.

38. The policies, procedures and customs of the IMPD led to and caused Keith Shelton, Dylan Sheets, Joseph Reynolds, and Joshua Smith's use of excessive, unreasonable, unnecessary and deadly force against Jessie Leonard, deprived Jessie Leonard of her constitutional rights under 42 U.S.C. § 1983, and caused Jessie Leonard's death.

39. The failure of the IMPD to follow and enforce some of its own internal policies and procedures led to and caused Keith Shelton, Dylan Sheets, Joseph Reynolds, and Joshua Smith's use of excessive, unreasonable, unnecessary and deadly force against Jessie Leonard, deprived Jessie Leonard of her constitutional rights under 42 U.S.C. § 1983, and caused Jessie Leonard's death.

40. The IMPD has failed to institute, maintain and enforce proper procedures for training and re-training its officers relative to the use of force, including deadly force; monitoring and supervising its officers relative to their use of force, including deadly force; and disciplining its officers relative to their use of force, including deadly force, all of which constitute a willful and deliberate indifference to and a willful and deliberate disregard of the serious risk of significant harm to members of the public and demonstrate a reckless and callous indifference to the Constitutional rights of members of the public, which led to and caused the death of Jessie Leonard.

41. The IMPD has a policy, custom and practice of failing to properly monitor the use of excessive, unreasonable and unnecessary force, including deadly force, by its officers; tolerating and failing to correct the use of excessive, unreasonable and unnecessary force, including deadly force, by its officers; and, failing to discipline, retrain or otherwise address and control the use of excessive, unreasonable and unnecessary force, including deadly force by its officers, all of which constitute a willful and deliberate indifference to and a willful and deliberate disregard of the serious risk of significant harm to members of the public and demonstrate a reckless and callous indifference to the Constitutional rights of members of the public, which led to and caused the death of Jessie Leonard.

42. The failure of the IMPD to properly and adequately review, revise, implement and enforce its policies, procedures and customs relative to investigating and handling the use of deadly force and shooting incidents in which its officers are

7

involved constitutes a willful and deliberate indifference to and a willful and deliberate disregard of the serious risk of significant harm to members of the public and led directly to the continued use of excessive, unreasonable and unnecessary use of excessive and deadly force by its officers and led to and caused the death of Jessie Leonard.

43. The failure of the IMPD to properly and adequately review and revise its policies, procedures and customs relative to investigating and otherwise handling police shootings constituted a willful and deliberate indifference to and a willful and deliberate disregard of the serious risk of significant harm to members of the public and demonstrate a reckless and callous indifference to the Constitutional rights of members of the public, and led directly to the continued use of excessive, unreasonable, unnecessary and deadly force by its officers and led to and caused the death of Jessie Leonard.

44. The facts set out above demonstrate a willful and deliberate indifference to and a willful and deliberate disregard of the serious risk of significant harm to members of the public and a reckless and callous indifference to the Constitutional rights of members of the public on the part of the IMPD, which led to and caused the death of Jessie Leonard.

### CIVIL RIGHTS VIOLATIONS – §1983 CLAIMS AGAINST ALL DEFENDANTS BY PLAINTIFF RAE-JEAN REYNOLDS, AS SPECIAL ADMINISTRATRIX OF THE ESTATE OF JESSIE LEONARD

45. Plaintiff, Rae-Jean Reynolds, as Special Administratrix of the Estate of Jessie Leonard, hereby incorporates by reference, re-states and re-alleges the

allegations contained in paragraphs 1 through 44 of this Complaint, as though fully set out herein.

46. Plaintiff, Rae-Jean Reynolds, as Special Administratrix of the Estate of Jessie Leonard, claims damages from the Defendants for the violations of Jessie Leonard's constitutional rights under 42 U.S.C. §1983 and her death, as set out in Sections I through III above.

**WHEREFORE,** Plaintiff, Rae-Jean Reynolds, as Special Administratrix of the Estate of Jessie Leonard, and on behalf of the beneficiary, Averitt Tennyson Mohler, prays for awards against all Defendants of compensatory and punitive damages, administrative costs and expenses, attorneys fees and costs, and all other damages recoverable against the Defendants under 42 U.S.C. § 1983, and all other just and proper relief in the premises.

Respectfully submitted,

/s/ Brandon E. Tate
Brandon E. Tate, Atty. No. 31531-49
Katherine A. Piscione, Atty. No. 37166-49
WALDRON TATE BOWEN SPANDAU LLC
156 E Market St, 5th Floor
Indianapolis, IN 46204
317-296-5294
F: 317-423-0772
brandon@wtbs-law.com
katie@wtbs-law.com

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all matters at issue herein.

Respectfully submitted,

/s/ Brandon E. Tate
Brandon E. Tate, Atty. No. 31531-49
Katherine A. Piscione, Atty. No. 37166-49
WALDRON TATE BOWEN SPANDAU LLC
156 E Market St, 5th Floor
Indianapolis, IN 46204
317-296-5294
F: 317-423-0772
brandon@wtbs-law.com
katie@wtbs-law.com